1

2

3

4

5

6           **UNITED STATES DISTRICT COURT**
                    **DISTRICT OF NEVADA**
7

8    SCOTT KANVICK,                    )      3:06-CV-00058-RAM
                                       )
9              Plaintiff,              )      **MEMORANDUM  DECISION**
                                       )           **AND ORDER**
10        vs.                          )
                                       )
11   CITY OF RENO, POLICE et. al,      )
     OFFICER ANTHONY ELGES,            )
12   OLIVER MILLER, AND OFFICER        )
     ROBERT KNIGHT, CITI-CENTER        )
13   APARTMENTS,                       )
                                       )
14             Defendants.             )
                                       )
15   _____ )

16        Before the court is Defendants' (City of Reno, Police et. al., Officer Anthony Elges,

17   Officer Oliver Miller and Officer Robert Knight) Motion for Summary Judgment (Doc. #42).

18   Plaintiff opposed the motion (Doc. #47) and Defendant replied (Doc. #49).[1] Also before the

19   court is Defendant City Center Limited Partnership's Motion for Summary Judgment (Doc.

20

21

_____

22        [1] Plaintiff filed a second reply and opposition to Defendants' reply (Doc. #50), to which Defendants filed

23   a motion to strike (Doc. #54) and Plaintiff replied (Doc. #60).  Pro se litigants are bound by the same rules of

24   procedure as other litigants. *See Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995) (citing *King v. Atiyeh*, 814 F.2d

25   565, 567 (9th Cir. 1987)).  The Federal Rules of Civil Procedure and the local rules of this court do not provide for

     second oppositions (essentially surreplies) as a matter of right and Plaintiff has not moved this court for, nor has

26   the court granted, leave to file the aforementioned surreply.  A surreply may only be filed by leave of court, *and*

27   *only to address new matters raised in a reply to which a party would otherwise be unable to respond.*

     Accordingly, Defendants' motion to strike (Doc. #54) is **GRANTED**.  Plaintiff's second reply and opposition to

28   Defendants' reply is hereby **STRICKEN**.  No sanctions shall be awarded.

#51).  Plaintiff opposed the motion (Doc. #55) and Defendant replied (Doc. #57).[2]  Also before the Court is Plaintiff's Motion for Partial Summary Judgment (Doc. #56).  Defendants filed a motion to strike Plaintiff's motion and a request for sanctions (Doc. #58).  Defendants also filed a request for extension of time to respond (Doc. #59).   Plaintiff opposed Defendants' motion to strike  (Doc. #61) and opposed Defendants' motion for extension of time to respond (Doc. #62).  Defendants did not file a response to Plaintiff's motion.  Finally, also before the court is Plaintiff's Motion for Judgment (Doc. #68), to which Defendants again filed a motion to strike (Doc. #69).  Plaintiff has not yet filed a response.  A hearing has been set for March 24, 2008 on all pending motions.

## I.  BACKGROUND

Plaintiff alleges he was unlawfully detained and arrested, subjected to an illegal search of his person and was falsely imprisoned when Defendant Citi-Center Apartments acted in concert with Reno Police Officers to deprive him of his constitutional rights (Doc. #11).  Plaintiff further alleges the City of Reno denied him due process after he was transported to the County Jail by failing to provide him with a probable cause hearing within 48-hours of his warrantless arrest and failing to timely provide him with a preliminary hearing (*Id.*).  Plaintiff also alleges Defendant officers subjected him to cruel and unusual punishment by detaining him in a hot, unventilated van for an excessive amount of time and driving wildly subjecting Plaintiff to back pain and injury, as well as night sweats and loss of sleep, and "creating deliberate indifference and continual medical treatment." (*Id.* at 6).

Plaintiff's First Amended Complaint includes the following causes of action: 1) violation of the Fourth and Fourteenth Amendments against unreasonable search and

---

[2] Plaintiff again filed a second reply and opposition (surreply) to Defendant's reply (Doc. #63).  Although Defendant did not file a motion to strike, for the same reasons set forth in note 1, Plaintiff's second reply is hereby **STRICKEN**.

1   seizures and false imprisonment[3]; 2) violation of the Fifth and Fourteenth Amendments Due

2   Process Clause and Equal Protection Clause to Due Process[4]; and 3) violation of the Eighth

3   and Fourteenth Amendments against cruel and unusual punishment (*Id.*).

## II.  STANDARD FOR SUMMARY JUDGMENT

5          The purpose of summary judgment is to avoid unnecessary trials when there is no

6   dispute as to the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*,

7   18 F.3d 1468, 1471 (9th Cir. 1994).  The moving party is entitled to summary judgment where,

8   viewing the evidence and the inferences arising therefrom in favor of the nonmovant, there

9   are no genuine issues of material fact in dispute and the moving party is entitled to judgment

10  as a matter of law. FED. R. CIV. P. 56(c); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).

11  Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary

12  basis for a reasonable jury to find for the nonmoving party. FED. R. CIV. P. 50(a).  Where

13  reasonable minds could differ on the material facts at issue, however, summary judgment is

14  not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*,

15  516 U.S. 1171 (1996).

16         The moving party bears the burden of informing the court of the basis for its motion,

17  together with evidence demonstrating the absence of any genuine issue of material fact.

18  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden,

19  the party opposing the motion may not rest upon mere allegations or denials of the pleadings,

20  but must set forth specific facts showing there is a genuine issue for trial. *Anderson v. Liberty*

21  *Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Although the parties may submit evidence in an

22  inadmissible form, only evidence which might be admissible at trial may be considered by a

---

[3] Plaintiff's first cause of action also includes a claim for conspiracy between all defendants (Doc. #11 at 4-5).

[4] Plaintiff asserts an "Equal Protection Clause to Due Process" claim.  However, Plaintiff's complaint merely pleads a procedural due process violation rather than an equal protection violation (Doc. #11 at 5).

1  trial court in ruling on a motion for summary judgment. Fed. R. Civ. P. 56(c); *Beyene v.*
2  *Coleman Sec. Serv., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

3      In evaluating the appropriateness of summary judgment, three steps are necessary:
4  (1) determining whether a fact is material; (2) determining whether there is a genuine issue
5  for the trier of fact, as determined by the documents submitted to the court; and (3)
6  considering that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S.
7  at 248.  As to materiality, only disputes over facts that might affect the outcome of the suit
8  under the governing law will properly preclude the entry of summary judgment; factual
9  disputes which are irrelevant or unnecessary will not be considered. *Id.*  Where there is a
10  complete failure of proof concerning an essential element of the nonmoving party's case, all
11  other facts are rendered immaterial, and the moving party is entitled to judgment as a matter
12  of law. *Celotex*, 477 U.S. at 323.  Summary judgment is not a disfavored procedural shortcut,
13  but an integral part of the federal rules as a whole. *Id.*

14                          **III.  DISCUSSION**

15  <u>**Defendants' (City of Reno, Police et. al., Officer Anthony Elges, Officer**</u>
   <u>**Oliver Miller and Officer Robert Knight) Motion for Summary Judgment**</u>

16      Defendants City of Reno and Officer Elges, Miller and Knight (hereinafter
17  "Defendants")  move for summary judgment on each of Plaintiff's claims asserting the
18  following arguments: 1) Plaintiff failed to plead facts sufficient to show a conspiracy between
19  Defendants and the apartment manager of Citi-Center apartments; 2) Plaintiff failed to show
20  an unlawful search and seizure or false imprisonment because Defendants had probable
21  cause to arrest Plaintiff for domestic battery; 3) Plaintiff's due process claim is inapplicable
22  to Defendants because Plaintiff was in the custody of Washoe County at the time of the
23  alleged due process deprivations; and 4) Plaintiff failed to show Defendants subjected
24  Plaintiff to a substantial risk of harm or that he did, in fact, suffer harm to support his cruel
25  and unusual punishment claim (Doc. #42). Defendants further argue Plaintiff has failed to
26  state a claim against the Defendant officers in their official capacities, the City of Reno is a

27

28                                  4

1    municipality and cannot be held liable where no underlying violation of its officers exists, the

2    Reno Police Department is not an entity capable of being sued, and Defendants are entitled

3    to qualified immunity (*Id.*).

4    Plaintiff argues the following: 1) Defendants and the apartment manager of Citi-Center

5    Apartments did, in fact, conspire to violate Plaintiff's constitutional rights; 2) Defendants

6    subjected Plaintiff to an unlawful search and seizure and false imprisonment when they

7    arrested Plaintiff without probable cause; 3) Defendants violated Plaintiff's due process

8    rights, despite his being in the custody of Washoe County, because their actions led to the due

9    process violation and the City of Reno is responsible for the Reno Justice Court; 4)

10   Defendants lack standing to claim entitlement to summary judgment on Plaintiff's cruel and

11   unusual punishment claim; 5) Plaintiff is suing the Defendant officers in their individual and

12   official capacities; 6) the City of Reno is liable for its policies, practices and customs and its

13   condoning of the Defendant officers' illegal acts; 7) Defendants lack qualified immunity; and

14   8) the Reno Police Department is not an entity being sued (Doc. #47).

15   **A.    <u>Conspiracy (Claim I)</u>**

16   Section 1983 actions may be brought to redress constitutional violations effected under

17   color of state law. *Fonda v. Gray*, 707 F.2d 435, 437 (9th Cir. 1983). "A private party may be

18   considered to have acted under color of state law when it engages in a conspiracy or acts in

19   concert with state agents to deprive one's constitutional rights." *Id.* (citing *United States v.*

20   *Price*, 383 U.S. 787, 794 (1966); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Stypmann*

21   *v. City and County of San Francisco*, 557 F.2d 1338, 1341-1342 (9th Cir. 1977); *Briley v.*

22   *California*, 564 F.2d 849, 858 (9th Cir. 1977); *Rankin v. Howard*, 633 F.2d 844, 850 (9th

23   Cir. 1980), *cert. denied*, 451 U.S. 939 (1981). There must be "significant" state involvement

24   in the action for a private individual to have acted "under color of state law." *Howerton v.*

25   *Gabica*, 708 F.2d 380, 382 (9th Cir. 1983).

26   The Supreme Court has articulated a number of tests or factors in determining when

27   state action is "significant", including the governmental nexus test, the joint action test, the

28

5

public function test, and the state compulsion test. *Howerton*, 708 F.2d at 383.  The Ninth Circuit has noted, however, that "[w]hile these factors are helpful in determining the significance of state involvement, 'there is no specific formula for defining state action.'" *Id.* (citing *Melara v. Kennedy*, 541 F.2d 802, 805 (9th Cir. 1976).   "The extent of state involvement remains a factual inquiry." *Id.*

At issue here is the joint action test.  In *Adickes and Price*, the Court explained the "joint action" test is met where "[p]rivate persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of [42 U.S.C. § 1983] ... It is enough that [the private party] is a willful participant in joint activity with the State or its agents." *Adickes*, 398 U.S. at 152; *Price*, 383 U.S. at 794; *accord, Dennis v. Sparks*, 449 U.S. 24, 27-29 (1980); *Sykes v. California*, 497 F.2d 197, 200 (9th Cir. 1974).  A private party is liable under this theory, however, only if its particular actions are "inextricably intertwined" with those of the government. *Mathis v. Pac. Gas & Elec. Co.*, 75 F.3d 498, 503 (9th Cir. 1996); *Collins v. Womancare*, 878 F.2d 1145, 1154 (9th Cir. 1989) (necessitating a showing of "substantial cooperation" between the private party and the State).  A conspiracy between the State and a private party to violate another's constitutional rights may also satisfy the joint action test. *See Adickes*, 398 U.S. at 150-152; *Howerton*, 708 F.2d at 383; *United Steelworkers v. Phelps Dodge Corp.*, 865 F.2d 1539, 1546-1547 (9th Cir. 1989) (en banc).

To prove a conspiracy between the state and a private party under § 1983, Plaintiff must show an agreement or "meeting of the minds" to violate constitutional rights. *Fonda*, 707 F.2d at 438; *see also Adickes*, 398 U.S. at 158; *United Steelworkers of America*, 865 F.2d at 1540-1541.  Each participant need not know the exact details of the conspiracy, but each participant must at least share the common objective of the conspiracy. *Id.*  "Evidence that police failed to exercise independent judgment will support an inference of conspiracy with a private party." *United Steelworkers of America*, 865 F.2d at 1541 (citing *Gramanos v. Jewel Companies*, 797 F.2d 432, 435-436 (7th Cir. 1986) (police agreement to arrest anyone designated by shopkeeper constitutes conspiracy), *cert. denied*, 481 U.S. 1028 (1987)).

6

1    Defendants assert Officers Elges, Knight and Miller did not enter into an agreement

2    with the night manager of Citi-Center Apartments and that, in fact, none of the officers even

3    had a conversation with the night manager (Doc. #42 at 8).  Thus Defendants contend that,

4    without any communication, there can be no conspiracy (*Id*.).

5    Plaintiff argues the night manager willfully participated in joint state action for

6    purposes of violating his civil rights and a meeting of the minds was apparent (Doc. #47 at

7    4).  Plaintiff alleges the night manager was the person who pointed Plaintiff out to the police

8    and the night manager and the officers were the people accusing Plaintiff of a crime;

9    therefore, the night manager was acting under color of state law (Doc. #47 at 4).

10    Furthermore, Plaintiff asserts his mother was present at the scene and she indicates that

11    police "interjected their own feelings between the manager and themselves before

12    questioning my son." (*Id*., Exh. A).  In Plaintiff's First Amended Complaint, he alleges the

13    night manager told police that residents had witnessed Plaintiff and his girlfriend fighting

14    and that an anonymous person could attest to the alleged acts (Doc. #11 at 5).  Plaintiff

15    further alleges no witness reports were taken and the officers did not investigate, but, rather

16    took the night manager's word that the alleged acts occurred (*Id*.).  Thus, Plaintiff is

17    essentially arguing that the police failed to exercise independent judgment to support an

18    inference of conspiracy with the night manager.

19    Whether Defendants were involved in an unlawful conspiracy is generally a factual

20    issue and should be resolved by the jury so long as there is a possibility that the jury can infer

21    from the circumstances that the alleged conspirators had a meeting of the minds and thus

22    reached an understanding to achieve the conspirator's objectives. *Adickes*, 398 U.S. at 158-

23    159.  The facts of this case do not support an inference there was a meeting of the minds

24    between Defendants and the apartment manager.  Instead, the facts contradict Plaintiff's

25    version of events and support Defendants' contention that no conspiracy existed.

26    First, the evidence indicates the victim, and not the apartment manager, called the

27    police for assistance after fighting with Plaintiff (Doc. #42, Exh. E, p. 5). The Incident Report

28

7

states the victim informed officers she was eventually able to get to the lobby of the apartment complex, despite Plaintiff following her and trying to stop her from leaving, in order to call police for assistance (*Id.*). Plaintiff has produced no evidence to contradict the Incident Report. Even if the victim requested the apartment manager call police on her behalf, it is the victim who requested police assistance.

Second, the evidence indicates the victim, and not the apartment manager, pointed Plaintiff out to the police when Plaintiff entered the lobby after officers arrived at the scene. Plaintiff offers no evidence, other than mere speculation, to support his allegation that the apartment manager pointed him out to police (Doc. #42, Exh. A ("Kanvick appeared in the lobby area, and Simmons immediately identified him."), Exh. C (" Before we left the lobby, Mr. Kanvick entered the lobby and was identified by the victim."), Exh. E ("As I was speaking to SIMMONS, KANVICK came into the lobby to speak to us.")).

Third, the evidence supports Defendants' assertion that an anonymous *female* witness, and not the apartment manager, relayed information to police the she witnessed the couple arguing on the second floor of the apartment complex, not in the lobby, and it appeared Plaintiff was not allowing the victim to leave (*Id.*, Exh. E).

Fourth, Plaintiff's allegation that the officers did not investigate and merely took the apartment manager's word is belied by the record. The evidence indicates Officer Elges interviewed the victim and the victim reported Plaintiff has become increasingly violent, had been going through her cell phone looking for previously dialed phone numbers, grabbed her by her hair when she attempted to leave the apartment, caused her to drop her baby, and pulled out a large handful of her hair (*Id.*, Exh. A). Furthermore, the evidence indicates officers ran a criminal history of Plaintiff and determined he had two prior domestic violence arrests within the past seven (7) years (*Id.*). Based on Plaintiff's criminal history, the physical evidence of the loss of hair from the victim's head, the lack on injury to Plaintiff despite his allegations the victim hit him in the face, and the anonymous witness's statement, the police determined Plaintiff was the aggressor and placed Plaintiff under arrest (*Id.*). Thus, the

8

evidence shows the officers independently investigated the domestic violence report when they arrived at the scene, and based on that investigation, determined there was probable cause to arrest Plaintiff.

Under these facts, Plaintiff has failed to show that a jury could make an inference that there was a meeting of the minds between Defendants and the apartment manager to deprive Plaintiff of his constitutional rights.  The evidence shows Defendants did investigate independently and did not rely on the night manager's word in determining whether to arrest Plaintiff.  To the contrary, Defendants responded to the scene after the victim called police and reported a domestic battery, investigated the victim's allegations and found evidence of a possible domestic battery, received similar information from an anonymous witness confirming the victim's version of events, ran a criminal history on Plaintiff discovering two (2) prior domestic violence charges within the past seven (7) years and found Plaintiff to be not credible.  Based on this information, Defendants determined probable cause existed to arrest Plaintiff, and did, in fact, arrest Plaintiff for domestic battery.  Thus, Plaintiff has failed to show a conspiracy between Defendants and the apartment manager.

## B.   Unlawful Search and Seizure (Claim I)

"The touchstone of the Fourth Amendment is reasonableness.  The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." *Florida v. Jimeno*, 500 U.S. 248, 250 (1991) (internal citations omitted).  As a general rule, searches and seizures violate the Fourth Amendment unless they are based on probable cause and executed pursuant to a valid warrant or are subject to the limited number of exceptions carved out by the Supreme Court within which a warrant is not required. *Katz v. United States*, 389 U.S. 347, 357 (1967); *Minnesota v. Dickerson*, 508 U.S. 366, 272 (1993); *United States v. Huguez-Ibarra*, 954 F.2d 546, 551 (9th Cir. 1992).  Among these exceptions is the search incident to arrest.  The search incident to arrest exception permits law enforcement officers to conduct a warrantless search of a person who is arrested, and of his surrounding area, when the search is incident to the arrest. *Chimel*

*v. California*, 395 U.S. 752, 762-763 (1969).  State law governing arrests is relevant to assessing the constitutionality of a search incident to that arrest. *United States v. Mota*, 982 F.2d 1384, 1387 (9th Cir. 1993).

In Nevada, NRS 171.124 restricts the authority of an officer to make a felony arrest without a warrant to offenses committed in his presence, or to instances where he has reasonable cause to believe that the person arrested has committed a felony.  Reasonable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that a felony had been committed by the person arrested. *Nootenboom v. State*, 82 Nev. 329, 418 P.2d 490 (1966).  "The constitutional validity of an arrest without a warrant for a felony not committed in the officer's presence depends on whether, at the moment the arrest is made, he has probable cause to make it. [Thus,][p]robable cause [also] exists if the facts and circumstances known to the officer warrant a prudent man in believing that a felony had been committed by the person arrested." *Washington v. State*, 94 Nev. 181, 183-184, 576 P.2d 1126, 1128 (1978).

Under federal law, determining whether a police officer had probable cause is ascertained by looking at the facts known to the officer at the time of the arrest. *Turner v. County of Washoe*, 759 F. Supp. 630, 634 (D. Nev. 1991).  Probable cause exists if the facts and circumstances within the person's knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent man in believing that the person had committed a crime. *Id.*  The existence of probable cause vitiates any claim of unlawful arrest. *Pierson v. Ray*, 386 U.S. 547 (1967); *Wyatt v. Cole*, 504 U.S. 158, 165 (1992); *Turner*, 759 F. Supp. at 633 ("It has long been established that a police officer who arrests with probable cause is immune from suit in a civil rights action.").

Defendants arrested Plaintiff for felony domestic battery (Doc. #42, Exh. E).[5]  Thus, the proper inquiry is whether, at the moment of the arrest, Defendants had probable cause to believe Plaintiff had committed a domestic battery.

Defendants assert the officers received reasonably trustworthy information from the victim, the dispatch call from security at Citi-Center Apartments and an anonymous eyewitness (Doc. #42 at 9).  Defendants further assert Officer Elges observed additional evidence, including clumps of hair pulled from the victim's head and dried blood around the victim's mouth (*Id.*).  Therefore, Defendants submit that the totality of the information and evidence received lead the officers to believe that Plaintiff did, in fact, commit a domestic battery (*Id.*).

Plaintiff argues that the alleged evidence Defendants relied upon was not enough to sustain a conviction, thus, it was not enough evidence to arrest (Doc. #47 at 5).  Plaintiff further argues courts do not usually look to police reports as evidence and the Declaration and Supplement in this case are not sworn affidavits in support of the arrest and a criminal complaint would be the only avenue to arrest Plaintiff since Defendants did not acquire probable cause (Doc. #47 at 5).  Plaintiff contends Defendants did not acquire probable cause because they obtained no written statements from the victim, the anonymous third party, or Plaintiff's mother; no officer viewed any dried blood around the victim's mouth, which is supported by the victim's refusal to cooperate and complete a written statement or allow officers to take photos of her alleged injuries; and there was no evidence Plaintiff pulled the victim's hair, as there was no hair wrapped in Plaintiff's fingers, on his shirt, or on the area around him (*Id.* at 6).  Plaintiff contends no dried blood or hair was found in the apartment and no photos were taken, which is evidenced by the information not being included in Officer Elges Affidavit (*Id.*).  According to Plaintiff, "[t]he lack of evidence in this case is lack

---

[5] The record indicates, at the time of the arrest, Plaintiff had two prior domestic violence arrests within the past seven (7) years (Doc. #42, Exh. A).  Under Nevada law, "the third and any subsequent offense within 7 years, is ... a category C felony and shall be punished as provided in NRS 193.130." NRS 200.485(1)(c).

of probable cause." (*Id.*).  Finally, Plaintiff asserts the only other person listed in the instant motion is the night manager, who Plaintiff contends is the "anonymous third party" and there was no witness statement because there was no witness, just as there was no dried blood, no photos, no hair and no probable cause (*Id*. at 7).

First, Plaintiff's argument – because the evidence was not enough to sustain a conviction, it is necessarily not enough to constitute probable cause to arrest – fails as a matter of law.  Whether charges are later dismissed does not affect the determination of whether probable cause existed to support the arrest. *Beauregard v. Wingard*, 362 F.2d 901, 903 (9th Cir. 1996) ("[W]here probable cause does exist civil rights are not violated by an arrest even though innocence may be subsequently be established.").

Second, neither Nevada law nor federal law require Defendants obtain sworn witness statements in order to establish probable cause to arrest.  The law requires Defendants have knowledge obtained from the facts and circumstances and of which they have reasonably trustworthy information sufficient to warrant a prudent man in believing that the person had committed a crime.  Here, the evidence shows Defendants obtained information from the facts and circumstances at the time of the arrest, including oral statements from the victim, eyewitness testimony from an anonymous female witness on the second floor, the dispatch call from security at Citi-Center Apartments, and Officer Elges personal observations of clumps of hair pulled from the victim's head and dried blood around the victim's mouth (Doc. 42 at 9).  While Plaintiff insists that these things did not occur, he offers no proof, but mere conclusory allegations that because no written statements were obtained and the anonymous witness did not fill out a report, Defendants lacked probable cause to arrest him.  It is important to note that Plaintiff contends the arrest "would have been valid if the 'anonymous witness' did fill out a report." (Doc. #47 at 7).  However, the Ninth Circuit makes clear that it accepts anonymous tips as a basis for probable cause where significant details of the tip were corroborated. *See Hopkins v. City of Sierra Vista, Arizona*, 931 F.2d 524 (9th Cir. 1991); *United States v. Rodriguez*, 869 F.2d 479 (9th Cir. 1989); *United States v. Fixen*, 780 F.2d

1434 (9th Cir. 1986). The evidence indicates the officers did, in fact, corroborate the anonymous witness's statement or, rather, the witness corroborated what the victim already told Officer Elges. In a signed, sworn affidavit, Officer Knight states that, while Officer Miller met with Plaintiff and Officer Elges met with the victim, an independent witness approached him and reported seeing Plaintiff try to prevent the victim from leaving the building and indicating she observed blood on the victim's mouth at the same time (Doc. #42, Exh. B). Officer Knight relayed this information to Officer Elges and Officer Miller after the victim already identified Plaintiff as the aggressor, after Officer Elges witnessed the victim run her fingers through her hair and saw large clumps of hair come out, and after Plaintiff apparently admitted to Officer Miller that he had been in an argument with the victim regarding the victim wanting to leave (*Id.,* Exh. A, Exh. C). Thus, under these facts, Defendants had reasonably trustworthy information sufficient to warrant a prudent man in believing Plaintiff committed domestic battery.

Third, Plaintiff's statements to Officer Miller, together with the facts and circumstances, support the officers' belief that Plaintiff was the aggressor and had committed a domestic battery. In a signed, sworn affidavit, Officer Miller states Plaintiff told him he had been in an argument with the victim about the victim wanting to leave, apparently claiming he tried to give her $5.00 and the victim attempting to grab his wallet instead (*Id.*, Exh. C). Officer Miller further states Plaintiff told him the victim became crazy and struck Plaintiff in the face three (3) times (*Id.*). Officer Miller noted there was no evidence of any injury to Plaintiff's face, there was nothing disarray about Plaintiff and no physical injuries were evident (*Id.*). Then, after informing Plaintiff that the victim said Plaintiff pulled large clumps of hair out of her head, Plaintiff told Officer Miller that the victim had pulled her own hair out (*Id.*). Plaintiff did not dispute the victim's hair being pulled out or the fact of her trying to leave; rather, Plaintiff disputes that he was the aggressor or that he pulled her hair out. In light of all the surrounding circumstances, including Plaintiff's prior domestic violence criminal history, the officers apparently determined Plaintiff was not credible and the victim

13

1    and anonymous witness were credible.  Thus, based on all the information obtained by the

2    officers and all the surrounding circumstances, Officer Elges placed Plaintiff under arrest (*Id.*,

3    Exh. A).

4           Fourth, Plaintiff attaches to his opposition the Reno Justice Court Proceedings, where

5    he was charged with felony domestic battery (Doc. #47, Exh. B).  Exhibit B clearly indicates

6    a probable cause affidavit was reviewed by the judge in those proceedings and the judge

7    found  probable cause (Doc. #47, Exh. B).  Plaintiff has presented no evidence to indicate

8    Exhibit B is inaccurate, given Plaintiff attaches said exhibit to apparently support own his

9    allegations.

10          Under these facts, the record shows, at the moment of the arrest, Defendants had

11   probable cause to arrest Plaintiff and the facts and circumstances known to the officers would

12   warrant a prudent man in believing Plaintiff had committed felony domestic battery.

13   Furthermore, "[h]earsay will support a finding of probable cause if the informer is found

14   credible and the basis for believing him credible is shown." *Id.* (citing *McCray v. Illinois*, 386

15   U.S. 300 (1967)).  Defendants have made such a showing here.  Accordingly, Plaintiff's claim

16   that Defendants committed an unlawful search and seizure under the Fourth Amendment

17   fails.

18   **C.**      **False Imprisonment (Claim I)**

19          In Nevada, false imprisonment is the confinement or detention of another person

20   without sufficient legal authority. NRS § 200.460.  A law enforcement officer is authorized

21   by state statute to detain any person whom the officer encounters under circumstances which

22   reasonably indicate that the person has committed, is committing or is about to commit a

23   crime. NRS § 171.123.  Thus, to establish false imprisonment, it is necessary to prove Plaintiff

24   was restrained of his liberty under the probable imminence of force without any legal cause

25   or justification. *Marschall v. City of Carson*, 86 Nev. 107, 110, 464 P.2d 494 (1970);

26   *Hernandez v. City of Reno*, 97 Nev. 107, 110, 464 P.2d 668 (1981); *Garton v. City of Reno*,

27   102 Nev. 313, 314-415, 720 P.2d 1227, 1228-1229 (1986).

28

As explained more fully *supra*, Defendants had legal cause and justification to arrest Plaintiff. Accordingly, Plaintiff's claim that Defendants falsely imprisoned him also fails.

For the reasons set forth above, summary judgment on Plaintiff's Fourth Amendment unlawful search and seizure and false imprisonment claim and Plaintiff's conspiracy claim (Claim I) is **GRANTED**.

**D.   Due Process (Claim II)**

Defendant asserts the conduct at issue in this claim pertains to events that occurred after Defendants transported Plaintiff to the Washoe County Jail; thus, Defendants assert Plaintiff has sued the wrong parties and this claim must be dismissed (Doc. #49 at 6).

Plaintiff alleges his due process rights were violated because there was no probable cause affidavit to arrest signed by a magistrate and he was not arraigned within the "48 hours" required subsequent to his warrantless arrest (Doc. #11 at 7). Plaintiff further alleges the preliminary hearing was also unduly delayed (*Id.*). Plaintiff essentially argues that Washoe County is not responsible for the delay because the County does not schedule criminal cases in the Reno Justice Court, "the Reno Justice Court does. Thus, describing the City of Reno." (*Id.*).

The Reno Justice Court is a department of Washoe County, not the City of Reno. To illustrate, Washoe County's webpage contains a link to the Reno Justice Court in which it explains:

> The [Reno Justice Court's] Criminal Division deals with cases which are being prosecuted by the Washoe County District Attorney's Office (or the State of Nevada Attorney General's Office in certain cases). All criminal proceedings in Reno Township, whether misdemeanor, gross misdemeanor or felony cases originate in Reno Justice Court. A preliminary examination is held in gross misdemeanor and felony cases and, upon a finding of probable cause by the judge, the case is forwarded to the Second Judicial District Court for adjudication. Reno Justice Court is the trial court in misdemeanor cases.

*See* http://www.co.washoe.nv.us/rjc/whatisrjc.htm.

Plaintiff does not dispute that he was in the custody of Washoe County, and not the City of Reno, at the time the alleged due process violations occurred. Plaintiff mistakenly asserts the City of Reno did not provide him with due process. Plaintiff has provided no

15

1  authority to support the assertion that the City of Reno is somehow responsible for any due

2  process violations occurring while he is in the custody of Washoe County simply because its

3  officers made the arrest.  Accordingly, summary judgment on Plaintiff's due process claim

4  (Claim II) is **GRANTED**.

5  **E.    Cruel and Unusual Punishment (Claim III)**

6          Plaintiff asserts his third claim for relief under the Eighth and Fourteenth

7  Amendments for cruel and unusual punishment (Doc. #11 at 6).  Defendant contends

8  Plaintiff's claim is properly analyzed under the Fourteenth Amendment because Plaintiff was

9  a pre-trial detainee (Doc. #42 at 10).  Both parties are incorrect.

10         The Eighth Amendment applies only after a conviction. *See Grinage v. Leyba*, 2008

11  WL 199720, -— F. Supp. ---- (D. Nev. 2008)(official citation not available).  The Due Process

12  Clause of the Fourteenth Amendment protects pretrial detainees from the use of excessive

13  force that amounts to punishment; however, this only occurs after the "seizure" or "arrest"

14  ends and the "pretrial detention" begins. *Graham*, 490 U.S. at 395, n.10; *see also Bell v.*

15  *Wolfish*, 441 U.S. 520, 535-539 (1979).  Where a claim of excessive force arises in the context

16  of an investigatory stop, arrest, or other "seizure" of a free citizen, the claim is "properly

17  analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Graham*, 490

18  U.S. at 388; *see also Reed v. Hoy*, 909 F.2d 324, 329 (9th Cir. 1989).

19         Fourth Amendment claims for excessive force can be based on post-arrest police

20  conduct; thus, a claim of the use of excessive force by an officer during transportation of an

21  arrestee states a valid § 1983 claim. *Fontana v. Haskin*, 262 F.3d 871, 878 (9th Cir. 2001).

22  Thus, under these facts, Plaintiff's third claim for relief is actually a Fourth Amendment claim

23  for excessive force and the court will analyze said claim accordingly.[6]

24  _____

25         [6] Courts have a duty to construe pro se pleadings liberally, including pro se motions as well as complaints.

26  *Bernhardt v. Los Angeles County*, 339 F.3d 920 (9th Cir. 2003).  Thus, when a plaintiff proceeds pro se, the
district court is required to afford him the benefit of the doubt in ascertaining what claims he raised in his

27  complaint and argued to the district court. *Alvarez v. Hill*, 2008 WL 659570, ---- F.3d ----, (9th Cir. 2008) (official

28  citation not available).

1    Plaintiff alleges Defendants, "[i]n order to get Plaintiff to confess ... stuck Plaintiff in

2   an old University of Nevada, Reno Police van which smelled like old feet, [and] was hot with

3   no air conditioning or ventilation." (*Id.*).  Plaintiff further alleges Officers Miller and Knight

4   kept Plaintiff in the van for an extensive amount of time at the Reno Police Department

5   during their shift change, stating the sooner Plaintiff told what happened, the sooner he

6   would get to jail (*Id.*).  Plaintiff then alleges, in route to jail, other officers sped up the freeway

7   with a broken shock mount, and sped along corners and straightaways "wildly to torment

8   Plaintiff as he protested his innocence and asked for air of some sort..." (*Id.*).

9    Defendants contend Plaintiff was placed in the police van at approximately 11:07 p.m.

10  and brought to the Reno Police Department at approximately 11:13 p.m. (Doc. #42 at 11).

11  Defendants further contend the shift change took approximately ten (10) minutes and Officer,

12  Elges, Miller and Knight had no further interaction, communication or contact with Plaintiff

13  (*Id.*).  Defendants request the court take judicial notice of the temperature at the time of the

14  arrest, which Defendants assert was only 66-68 degrees (Doc. #42 at 11, Exh. D).

15   Plaintiff does not dispute that none of the named-Defendants drove Plaintiff to the jail

16  from the Reno Police Department.  Plaintiff contends the only facts in dispute are the length

17  of time Plaintiff sat in the van during shift change (Doc. #47 at 9).  Plaintiff argues the

18  temperature outside has no bearing on how hot it was in the van at the time of Plaintiff's

19  arrest (Doc. #47n at 9).  Furthermore, Plaintiff speculates that Defendants may have

20  informed the officers at the shift change to "toss him around in the back." (*Id.*).

21   While the Ninth Circuit has not squarely addressed the issue of a post-arrest detention

22  in a hot, unventilated police vehicle for an extended period of time, it appears said conduct

23  can constitute excessive force under the Fourth Amendment. *See Fontana*, 262 F.3d at 878.

24  Other Circuits are in agreement.  For example, the Supreme Court held in *Hope v. Pelzer* that

25  prison officials violated the Eighth Amendment by exposing a prisoner to the sun for seven

26  hours while handcuffed to a hitching post, subjecting the prisoner to thirst, taunting, and

27  deprivation of bathroom breaks. *Hope v. Pelzer*, 536 U.S. 730, 738 (2002).  Then, applying

28

17

*Hope*, the Sixth Circuit found that a post-arrest detention in a police vehicle "with the windows rolled up in ninety degree heat for three hours constituted excessive force" under the Fourth Amendment. *Burchett v. Kiefer*, 310 F.3d 937, 945 (6th Cir. 2002).  The Fifth Circuit, on the other hand, found a post-arrest detention for approximately one-half hour in an unventilated police vehicle in the sun was not in violation of the Fourth Amendment. *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir.2001).  And a district court in New York found no Fourth Amendment violation where a suspect was left in police vehicle for ten minutes in a hot car but suffered no injuries. *Esmont v. City of New York*, 371 F. Supp. 2d 202, 214 (S.D.N.Y. 2005).

Here, Plaintiff has failed to name the officers who allegedly drove the van "wildly to torment Plaintiff."  Thus, the only actions relevant to these named-Defendants are the drive from the apartment complex to the Reno Police Department for the shift change and the amount of time Plaintiff sat waiting in the van until the shift change occurred.

Defendants contend the total amount of time was approximately seventeen (17) minutes.  While Plaintiff alleges he sat in the van for an "extensive amount of time", he has not stated what constitutes an excessive amount of time and has produced no evidence to dispute Defendants' assertion that the total time was approximately seventeen (17) minutes. Plaintiff simply alleges the length of time is in dispute (Doc. #47 at 9).  Furthermore, although Plaintiff alleges he suffered injury from the heat and further injury to his lower back, he has offered no evidence of any alleged injuries.

Viewing the evidence in the light most favorable to Plaintiff and drawing all inferences in his favor, even assuming Defendants made statements regarding leaving Plaintiff in the van until he talks, the evidence indicates Plaintiff was left in the van long enough for Defendants to change shifts, and was then transported to the jail.  There is no evidence Plaintiff suffered any injuries on the way to the police station or while he waited in the van for the officers to affect a shift change.  Under these facts, Defendants' conduct does not rise to the level of a Fourth Amendment violation.  Accordingly, summary judgment on Plaintiff's

1   excessive force claim, improperly pled as a cruel and unusual punishment claim, (Claim III)

2   is **GRANTED**.

3          Because summary judgment is granted on each of Plaintiff's claims (Claims I, II, and

4   III), the court need not reach Defendants' remaining arguments regarding official capacity,

5   municipal liability, whether the Reno Police Department is an entity capable of being sued

6   and qualified immunity.

7   **D**EFENDANT **C**ITY **C**ENTER **L**IMITED **P**ARTNERSHIP'S **M**OTION FOR **S**UMMARY **J**UDGMENT

8          Defendant City Center Limited Partnership (hereinafter "Defendant") moves for

9   summary judgment on each of Plaintiff's claims asserting it is not a person "acting under

10  color of state law" for § 1983 liability purposes, Plaintiff had failed to show a conspiracy

11  between the night manager and the Defendant officers, and, in the event Plaintiff's conspiracy

12  claim survives, there is no respondeat superior liability under § 1983 (Doc. #51).

13         Plaintiff argues Defendant is a person acting under color of state law under § 1983;

14  Plaintiff has sufficiently shown a conspiracy between the defendants; and Defendant is liable

15  for the acts of the night manager because Defendant gave the manager the power and

16  authority to act as its agent and respondeat superior liability is a basis for a § 1983 action

17  under *Monell v. Dept. of Soc. Services of the City of New York*, 436 U.S. 658 (1978) on the

18  basis of polices, practices, customs and procedures of an employer (Doc. #55).

19                        **Acting Under Color of State Law**

20         Section 1983 actions may be brought to redress constitutional violations effected under

21  color of state law. *Fonda v. Gray*, 707 F.2d 435, 437 (9th Cir. 1983).  "A civil rights plaintiff

22  suing a private individual (or entity) under § 1983 must demonstrate that the private

23  individual acted under color of state law; plaintiffs do not enjoy Fourteenth Amendment

24  protections against 'private conduct abridging individual rights.'" *Franklin v. Fox*, 312 F.3d

25  423, 444 (9th Cir. 2002) (citing *Burton v. Wilmington Park Auth.*, 365 U.S. 715, 722 (1961).

26  "Section 1983 liability attaches only to individuals 'who carry badges of authority of a State

27

28                                          19

and represent it in some capacity.'" *Id.* (citing *Monroe v. Pape*, 365 U.S. 167, 172 (1961), *overruled in part by Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)).

"In the typical case raising a state-action issue, a private party has taken the decisive step that caused the harm to the plaintiff, and the question is whether the State was sufficiently involved to treat that decisive conduct as state action. This may occur ... sometimes if [the State] knowingly accepts the benefits derived from unconstitutional behavior." *Id.* (citing *Nat'l Collegiate Athletic Ass'n. v. Tarkanian*, 488 U.S. 179, 192 (1988). Constitutional standards should be invoked only "when it can be said that the State is responsible for the specific conduct of which the plaintiff complains." *Id.* (citing *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n.*, 531 U.S. 288, 295 (2001) (internal quotations omitted) (emphasis in original)).

"A private party may be considered to have acted under color of state law when it engages in a conspiracy or acts in concert with state agents to deprive one's constitutional rights." *Id.* (citing *United States v. Price*, 383 U.S. 787, 794 (1966); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Stypmann v. City and County of San Francisco*, 557 F.2d 1338, 1341-42 (9th Cir. 1977); *Briley v. California*, 564 F.2d 849, 858 (9th Cir. 1977); *Rankin v. Howard*, 633 F.2d 844, 850 (9th Cir. 1980), *cert. denied*, 451 U.S. 939 (1981)). There must be "significant" state involvement in the action for a private individual to have acted "under color of state law." *Howerton,* 708 F.2d at 382. Thus, to be liable as a co-conspirator, a private defendant must share with the public entity the goal of violating a plaintiff's constitutional rights. *Franklin*, 312 F.3d at 445. The Ninth Circuit has been careful to require a substantial degree of cooperation before imposing civil liability for actions by private individuals that impinge on civil rights. *Id.*

Defendant asserts it was not acting under color of state law; thus, summary judgment is appropriate as to all of Plaintiff's claims against it on this basis alone (Doc. #51 at 6).

Plaintiff argues Defendant was acting under color of state law in the following ways: 1) the residential night manager used the State's authority to accuse Plaintiff of a crime,

20

exercising powers of the state; 2) the residential night manager had dual roles as security and manager, making administrative decisions on behalf of tenants and City Center; 3) the residential night manager has an obligation to protect its residents; and 4) the residential night manager provides a traditionally public function as the manager and the State has a substantial interest in protecting its citizens from false arrest, false imprisonment and malicious prosecution (Doc. #55 at 5). Plaintiff's arguments are without merit for the reasons set forth below.

First and foremost, Plaintiff has failed to show any deprivation of his constitutional rights, as the Defendant officers had probable cause to arrest Plaintiff for felony domestic battery. Plaintiff has cited no authority to support his argument that Defendant acted under color of state law by reporting an alleged crime to the police and purportedly accusing Plaintiff of that crime. To the contrary, the Ninth Circuit has expressly held that "merely complaining to the police does not convert a private party into a state actor." *Collins v. Womancare*, 878 F.2d 1145, 1155 (9th Cir. 1989); *see also Peng v. Penghu*, 335 F.3d 970 (9th Cir.2003)*; Rivera v. Green*, 775 F.2d 1381, 1382-1384 (9th Cir. 1985), *cert. denied*, 475 U.S. 1128 (1986); *Arnold v. IBM*, 637 F.2d 1350, 1357-1358 (9th Cir.1981)*; Sykes v. State of California (Department of Motor Vehicles)*, 497 F.2d 197, 202, n. 3 (9th Cir. 1974). These holdings include the case where the defendant allegedly reports false allegations to the police. For instance, in *Peng*, the plaintiff sought to bring a § 1983 suit against his sister and her son based on allegations that they had given false statements to a deputy, which caused the plaintiff's arrest. *Id.* at 972. The district court dismissed the claims against the sister and her son because the plaintiff had not demonstrated that they were state actors, and the Ninth Circuit affirmed this dismissal. *Id.* at 980. Here, as in *Peng*, there is no evidence the Defendant officers knew Plaintiff was innocent of domestic battery; thus, the a finding of concerted action cannot be found under these facts and Plaintiff has failed to show how the manager used the State's authority to accuse him of a crime. *Id.*

Second, having dual roles as manager and security of the apartments does not convert the manager into a state actor for purposes of § 1983 liability and Plaintiff has provided no authority to support this argument.

Third, assuming the manager does have an obligation to protect its tenants, this obligation does not convert the manager into a state actor for purposes of § 1983 liability and Plaintiff has provided no authority to support this argument.

Finally, Plaintiff's argument – that the manager provides a traditionally public function and the state has a substantial interest in protecting its citizens from false arrest, false imprisonment and malicious prosecution, thereby, rendering Defendant's actions as those under color of state law – is without merit. It is undisputed that Defendant is a private business and not a governmental entity. "The fact that a private business holds itself open to the public cannot be determinative of the degree of state involvement in its activities. Indeed, the relevance of this fact is slight. Most service and retail businesses are open to the public, yet the government is not thought to be involved in their operation, let alone significantly." *Scott v. Eversole Mortuary*, 522 F.2d 1110, 1116 (9th Cir. 1975). "[T]he fact that a business serves the public cannot transform private action with otherwise insignificant state involvement into action under color of state law." *Id.* Defendant officers merely responded to a report of a possible domestic dispute at Citi-Center Apartments. While the state furnishes services to private entities, including police protection, such protection does not transform Defendant's private action of reporting illegal conduct to the police into action under color of state law.

For the reasons set forth above, Plaintiff has failed to show Defendant acted under color of state law for purposes of § 1983 liability. Accordingly, summary judgment on Plaintiff's claims against Defendant City Center Limited Partnership is **<u>GRANTED</u>**.

Because summary judgment must be granted on this basis, the court need not consider Defendant's remaining arguments regarding conspiracy and respondeat superior liability under § 1983.

22

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT / PLAINTIFF'S MOTION FOR JUDGMENT**[7]

Plaintiff seeks partial summary judgment on Claim I, requesting $300,000 as compensatory damages for unlawful incarceration and detainment, loss of employment and loss of residence (Doc. #56 at 2-3). Plaintiff also requests $150,000 in punitive damages for the unlawful search and seizure, equal protection violation and due process violation (*Id*. at 6).

Defendants filed a motion to strike Plaintiff's motion for partial summary judgment and for sanctions on the sole basis that Plaintiff's motion was filed sixty (60) days after the deadline for filing dispositive motions as set forth in the court's Scheduling Order (Doc. #58). Defendants then filed a motion for extension of time to respond to Plaintiff's motion for partial summary judgment on October 12, 2007 (Doc. #59).

In his reply to Defendants' motion to strike and for sanctions, Plaintiff argues he did not know the dates of the Scheduling Order because, at this stage, no scheduling order exists as Plaintiff's last docket sheet of November 15, 2006 shows documents 19-23 mailed (Doc. #61 at 2). Plaintiff further argues Defendants cannot receive sanctions in the form of attorney's fees from an inmate, unless his case is dismissed as frivolous or malicious (*Id*.). Finally, Plaintiff argues he is entitled to the relief requested because he proved his criminal case against him was dismissed due to lack of evidence and probable cause (*Id*. at 3). In his reply to Defendants' motion for extension of time to respond, Plaintiff argues no good cause was shown and Defendants' motion was used as unnecessary delay (Doc. #62). Next, Plaintiff filed a Declaration of Entry of Default, asserting Defendants' failure to timely file their opposition entitles him to judgment as a matter of law (Doc. #65 at 2). Plaintiff subsequently filed his Motion for Judgment requesting the same relief (Doc. #68).

While under Local Rule 7-2, "[t]he failure of an opposing party to file points and authorities in response to any motion shall constitute a consent to a granting of the motion",

---

[7] Plaintiff's motion for partial summary judgment and motion for judgment request the same relief.

23

1  the local rules do not require a court to automatically grant the motion and the failure to file
2  an opposition is not dispositive of the motion itself.  The court may consider the merits of the
3  motion and does so here.

4      For the reasons set forth more fully *supra*, Plaintiff's claims, including Claim I, fail as
5  a matter of law.  Accordingly, Plaintiff's motion for partial summary judgment is **DENIED**.[8]
6  Plaintiff's motion for judgment is also **DENIED**.

7                              **IV.  CONCLUSION**

8      For the reasons set forth above, the court finds as follows:

9      1)     Defendants' (City of Reno, Officers Elges, Miller and Knight) Motion for
10             Summary Judgment (Doc. #42) is **GRANTED**

11     2)     Defendant City Center Limited Partnership's Motion for Summary Judgment
12             (Doc. #51) is **GRANTED**.

13     3)     Plaintiff's Motion for Partial Summary Judgment (Doc. #56) is **DENIED**.

14     4)     Plaintiff's Motion for Judgment (Doc. #68) is **DENIED**.

15     **LET JUDGMENT ENTER ACCORDINGLY.**

16     DATED:   March 27, 2008.

17
18
19                                        _____
                                          UNITED STATES MAGISTRATE JUDGE
20
21
22
23
24

25     [8] Because Plaintiff's Motion for Partial Summary Judgment (Doc. #56) is denied on the merits,
26  Defendants' City of Reno, Officers Elges, Miller and Knight's Motion to Strike Plaintiff's Motion for Partial
    Summary Judgment and Request for Sanctions (Doc. #58) is hereby **DENIED AS MOOT**. Defendants City of
27  Reno, Officers Elges, Miller and Knight's Motion for Extension of Time to Respond to Plaintiff's Motion for Partial
28  Summary Judgment (Doc. #59) is also **DENIED AS MOOT**.